

**SO ORDERED.**

**SIGNED this 06 day of July, 2009.**

_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for print publication and on-line use.
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In Re: | |
| NICHOLAS K.  KUHN, | CASE NO.  07-13105 |
| DEBTOR. | CHAPTER 7 |
| NICHOLAS K.  KUHN, | |
| PLAINTIFF, | |
| v. | ADV. NO.  08-5089 |
| JOAN WAGNON, Secretary, State Of Kansas Department Of Revenue (Division Of Vehicles); CARL B. DAVIS, Trustee; CITIZENS AUTOMOBILE FINANCE, INC.; and CITIZENS BANK, | |
| DEFENDANTS. | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

The matter under advisement is Nicholas K. Kuhn's (hereafter the Plaintiff or Debtor) motion for summary judgment on the issue of whether the lien of Defendant Citizens Bank (hereafter Citizens or Bank) on Debtor's 2005 Ford truck is ineffective because prepetition Citizens obtained a judgment on Debtor's note secured by the truck but failed to foreclose its lien on the Ford in the same action. Debtor Nicholas Kuhn appears by his counsel Calvin L. Wiebe, of Wiebe Law Offices, P.A. Defendant Citizens Bank appears by Adam K. Berman, of Berman & Rabin, P.A. There are no other appearances. The Court has jurisdiction.[1]

**BACKGROUND.**

Debtor filed a voluntary petition under Chapter 7 on December 21, 2007. Debtor claimed a 2005 Ford F-250 truck as exempt. Debtor's adversary Complaint to Determine the Validity or Extent of Lien was filed on April 9, 2008, against Citizens Bank; Joan Wagnon, in her capacity as Secretary of the State of Kansas Department of Revenue; and Carl B. Davis, in his capacity as Chapter 7 trustee. On April 23, 2008, an amended complaint was filed, adding Citizens Automobile Finance, Inc. as a defendant. The Trustee filed a notice of disclaimer. On December 16, 2008, Debtor moved for summary judgment against defendant Citizens Bank. Citizen's responded, and the matter has been fully briefed. For the reasons stated below, the Court denies the motion and holds as a matter of law the obtaining of a judgment on the note

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). There is no objection to venue or jurisdiction over the parties.

Case 08-05089    Doc# 47    Filed 07/06/09    Page 2 of 19

secured by the 2005 Ford without foreclosure of the lien on the vehicle did not impair the Bank's lien.

**FINDINGS OF FACT.**

The following facts are uncontroverted. On October 7, 2004, Debtor purchased a 2005 Ford F250 truck. Citizens Bank, through Citizens Automobile Finance, Inc., financed the purchase, and Debtor granted Citizens a security interest in the Truck. The lien was perfected by notation on the certificate of title. The security agreement states it is governed by the law of Kansas, provides for repossession of the vehicle upon default, and states that the secured creditor "may delay or refrain from enforcing any of our rights under the Contract without losing them."

On March 29, 2007, Citizens filed suit on the note against Debtor in Sedgwick County District Court, but did not seek to foreclose the lien on the 2005 Ford. On September 28, 2007, judgment in the amount of $46,471.30 was entered against Debtor. Citizens has never repossessed the truck, has not sold the truck, and the truck remains in Debtor's possession. Debtor's Schedule D does not list any creditors as having a lien on the truck. Schedule F lists Citizens Automobile Finance has having a claim for $46,000 for purchase of the truck. The Statement of Financial Affairs lists the Sedgwick County judgment and gives notice that a motion to avoid the lien in the truck will be filed.

**POSITIONS OF THE PARTIES.**

Debtor asserts that under Kansas law Citizen's lien on the 2005 Ford became "ineffective prior to the bankruptcy"[2] because Citizens obtained a judgment on the note without simultaneously foreclosing its lien. He relies upon the Kansas comments to K.S.A. 84-9-501

---

[2] Doc. 10 (amended complaint).

3

(1996), *Home State Bank v. Hoidale, Co., Inc.*[3] and *In re Wilson.*[4]  In his view, these authorities support the proposition that the doctrine of election of remedies, or the one action rule, which the Kansas Supreme Court has held applies to enforcement of real property mortgages, applies to security interests in personal property.  The Bank responds that the one action rule applies only to real property mortgages and a creditor holding a note secured by personal property may sue on the note without impairing the right to foreclose on personal property securing that obligation.

**ANALYSIS AND CONCLUSIONS OF LAW.**

The issue presented is whether Citizen's perfected security interest in the truck was ineffective on the date of filing because of actions taken by Citizens to enforce Debtor's obligation after default.[5]  Since the truck is personal property, the starting point is the Kansas version of Article 9 of the UCC.  As to a secured party's rights upon default, K.S.A. 84-9-601 (2008 Cumm. Supp) (hereafter K.S.A. 84-9-601 or UCC § 9-601), which is identical to the uniform version of Rev. UCC § 9-601, provides:

> (a) Rights of secured party after default. After default, a secured party has the rights provided in this part and, except as otherwise provided in K.S.A. 84-9-602 and amendments thereto, those provided by agreement of the parties. A secured party:
>
> (1) May reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure; and
> (2) if the collateral is documents, may proceed either as to the documents or as to the goods they cover.
> * * *

---

[3] *Home State Bank v. Hoidale Co., Inc.*, 239 Kan. 165, 718 P.2d 292 (1986).

[4] *Liberty Loan Corp. v. Wallace (In re Wilson)*, 390 F. Supp. 1121 (D. Kan. 1975).

[5] Debtor does not seek to avoid the lien under Code, but relies upon the assertion that the lien was ineffective as of the date of filing.

4

(c) Rights cumulative; simultaneous exercise. The rights under subsections (a) and (b) are cumulative and may be exercised simultaneously.

\* \* \*

(e) Lien of levy after judgment. If a secured party has reduced its claim to judgment, the lien of any levy that may be made upon the collateral by virtue of an execution based upon the judgment relates back to the earliest of:

(1) The date of perfection of the security interest or agricultural lien in the collateral;
(2) the date of filing a financing statement covering the collateral; or
(3) any date specified in a statute under which the agricultural lien was created.

The relevant substantive provisions of this section of revised Article 9 are the same as in former UCC § 9-501, last codified in Kansas at K.S.A. 84-9-501(Furse 1996) (hereafter UCC § 9-501).[6]

The Kansas appellate courts have not ruled on the question whether the one action rule applies to actions on notes secured by personal property. In *Rural Gas*[7] the appellant/garnishor contended a secured creditor's taking a judgment on a note waived its lien on property covered

---

[6] The section does not appear to have materially changed since its initial enactment in 1965. The relevant portions of the section described, but not quoted, in 1970 in *Rural Gas, Inc. v. Shepek*, 205 Kan. 397, 469 P.2d 341 (1970), are identical to the substance of K.S.A. 84-9-501(Ensley 1983). The section was not amended between 1983 and 1996. K.S.A. 84-9-501(Furse 1996) provided in part:

(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . . The rights and remedies referred to in this subsection are cumulative.

\* \* \*

(5) When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of perfection of the security interest in such collateral. . . .

[7] *Rural Gas, Inc. v. Shepek*, 205 Kan. at 397, 469 P.2d at 341.

5

by its security agreement. The Kansas Supreme Court declined the opportunity to rule whether the one action rule applied to suits on notes secured by personal property and decided the case based upon the priority granted to a judgment lien by K.S.A 84-9-501(5).

Most courts have construed Rev. UCC § 9-601 and former UCC § 9-501 to mean that the secured party may pursue alternative remedies,[8] and a secured party's lien remains valid after it has obtained an in personam judgment, even though it did not foreclose its lien. For example, in the 1959 case of *In re Adrian Research and Chemical Co., Inc.,*[9] the Third Circuit construed Article 9 and held that the note holder "did not waive his right to rely on the collateral when he proceeded by execution and levy to enforce the judgment on the note against the debtor."[10] The Tenth Circuit Court of Appeals, in 1981, applying Colorado law, held that the bank, that had taken an in personam judgment against the bankrupt prepetition, but failed to foreclose or to execute on the judgment, held a secured claim.[11]

Courts have applied this construction to circumstances nearly identical to those before the Court and have held that a creditor by seeking an in personam judgment does not forego its interest in collateral. For example, in *Plante,*[12] debtors borrowed $5,000 and granted the creditor a security interest in their automobile. Debtors defaulted, and the creditor obtained a judgment, which it attempted to enforce by garnishment. In their subsequent Chapter 13 case, the debtors

---

[8] *See In re Plante*, 2008 WL 2518616 (Bankr. D. Idaho 2008).

[9] *In re Adrian Research and Chemical Co., Inc.*, 269 F.2d 734 (3rd Cir. 1959) (decided under Pennsylvania law, which had adopted a version of UCC § 9-501 in 1953).

[10] *Id.*, 269 F.2d at 738.

[11] *Lentz v. Bank of Colorado (In re Hill)*, 648 F.2d 1282 (10th Cir. 1981).

[12] *In re Plante*, 2008 WL at 2518616.

6

contended the creditor held an unsecured claim, claiming the creditor lost its status as a secured creditor by obtaining the prepetition judgment. The court rejected the debtors' position, holding that under Rev. UCC § 9-601, "a secured creditor does not forego its security interest in collateral when it elects to first obtain a personal judgment against the borrowers."[13]

*Egbe,*[14] decided under California law, and *Snake River Equipment*,[15] decided under Idaho law, arose under facts nearly identical to *Plante* and this case. These courts applied UCC § 9-501, the Article 9 remedies section in place before the revision of Article 9, and reached the same conclusion as *Plante*. In *Egbe*, prepetition debtors financed the purchase of an automobile and granted the creditor a security interest. After default, the creditor filed suit on the contract and obtained a judgment, but did not repossess the automobile. In their subsequent Chapter 13 case, debtors asserted that the creditor was unsecured. The court rejected this contention. The court relied upon the cumulative remedy provision of UCC § 9-501 and held that "without a specific enactment retaining it, the Commercial Code displaces the common law doctrine of the election of remedies."[16] In *Snake River Equipment*,[17] the Idaho Court of Appeals also applied UCC § 9-501 and held a creditor was entitled to repossess and sell collateral after receiving judgment against the debtors on the underlying note. It rejected the debtor's reliance upon pre-

---

[13] *Id.*, 2008 WL at 2518616 *1.

[14] *Merchants Recovery Serv., Inc. v. Egbe (In re Egbe)*, 107 B.R. 711 (9th Cir. BAP 1989).

[15] *Snake River Equipment Co. v. Christensen*, 107 Idaho 541, 691 P.2d 787 (Idaho App. 1984).

[16] *In re Egbe,* 107 B.R. at 713 (finding that the Unruh Act, applying the doctrine of election of remedies to consumer sales, did not control over UCC § 9-501 in light of the specifically applicable statutes regarding installment sales of automobiles, which contained no such election of remedies provision).

[17] *Snake River Equipment Co. v. Christennsen*, 107 Idaho at 541, 691 P.2d at 787.

7

code authority that "rigidly enforced the election of remedy rule,"[18] based upon the finding that the drafters of Article 9 intended UCC § 9-501 to eliminate election of remedies problems and that the cases had consistently applied Article 9 to permit the pursuit of alternate remedies. The creditor was therefore entitled to repossess and sell the collateral after obtaining the judgment on the note.

Commentators likewise agree that a creditor's judgment on a secured note does not bar later enforcement of the security interest. Anderson states:

> The entry of a judgment on the debt does not constitute an election so as to bar the creditor from employing some other procedure or employing a Code remedy.
> The fact that the creditor sues and obtains a judgment on the note representing the secured debt does not bar the creditor from later proceeding to enforce the security interest to the extent that the judgment on the note has not been paid, or from asserting the status of a secured creditor in subsequent bankruptcy proceedings against the debtor.[19]

Hawkland states:

> Section 9-501 presumably settles the question of the election of remedies by the secured party when the debtor has defaulted. The last sentence of 9-501(1) provides that the secured party's rights and remedies referred to in that subsection are cumulative. . . . The significance of this provision is that the election by the secured party to proceed with respect to a particular right or remedy does not bar the secured party's right to exercise another right or remedy at a later time. For example, upon default by the debtor, the secured party may first sue the debtor on the obligation, reducing his or her claim to judgment. Without proceeding further with levy and foreclosure, the secured party may proceed with repossession and sale of the collateral without being hindered by the debtor's argument that he or she has waived

---

[18] *Id.*, 691 P.2d at 790.

[19] 10 Anderson, *Uniform Commercial Code*, § 9-501:123 (3rd ed. 1999).

8

his or her right to repossession and sale by the earlier election to sue on the debt.[20]

Barkley Clark states:

> . . . It is clear that Article 9 authorizes an in personam judgment, even before any attempt is made to foreclose on the collateral. Under old UCC § 9-501(1), the secured party "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . . The rights and remedies referred to in this subsection are cumulative." To the same effect are Rev. UCC §§ 9-601(a) and (c). . . .
>
>         * * *
>
> If the secured party opts to seek a personal judgment against the debtor, postjudgment execution can be used to seize both the Article 9 collateral and any other unencumbered assets that may be available. . . . Moreover, foreclosure on the collateral by execution is not subject to attack by a trustee in bankruptcy as a preferential judgment lien voidable to the extent that it arises shortly before bankruptcy. This is because old UCC § 9-501(5) and Rev. UCC § 9-601(e) treat the execution as foreclosure of the original security interest under Article 9 . . . , with relation back to the time when the security interest was originally perfected. . . .
>
>         * * *
>
> Inherent in the concept of relation-back is the idea that the secured party faces no election of remedies. This point is driven home even more clearly by old UCC § 9-501(1) and Rev. UCC § 9-601(c), which state that the rights and remedies referred to in that subsection are cumulative. In other words, if the secured party opts to seek an in personam judgment prior to foreclosing on the collateral, there is no waiver of this right to enforce the security interest later under Article 9.[21]

Based upon Rev. UCC § 9-601 and the overwhelming authority of the foregoing cases

and commentators, the Court finds that Article 9 drafters intended to reject the doctrine of

---

[20] 9 *Hawkland Uniform Commercial Code Series,* § 9-501:7 (2001).

[21] 1 Barkley Clark & Barbara Clark, *The Law of Secured Transactions under the Uniform Commercial Code,* ¶ 4.03[2][a] (A.S. Pratt & Sons, Rev. Ed. 2009).

9

election of remedies, the theory Debtor relies upon when contending that Citizen's claim is unsecured. Under the generally accepted construction of Rev. UCC § 9-601, a secured party may obtain a personal judgment on a note secured by a perfected lien on personal property without waiver of the future right to realize on its collateral.

However, before finding this uniform construction of Article 9 controls this case, the Court must consider whether the Kansas authorities relied upon by Debtor require an unique construction of Article 9. The problem is succinctly stated in the Kansas Comment, 1996 to UCC § 9-501, which finds there are possibly two relevant limitations of Kansas law, the doctrine of election of remedies and marshalling of assets,[22] which might alter creditors' remedies. As to the election of remedies, it states:

> Under the second and last sentences of this subsection [1], as well as subsection (2), the rights and remedies of the secured party are cumulative. Although the subsection indicates that the creditor could move against the collateral, obtain a personal judgment against the debtor, pursue any surety, or seek to enforce the obligation through any other means, in any order, it is clear that the drafters intended great flexibility and an elimination of any election of remedies approach, there are currently two limitations under Kansas law to the general rule of cumulative remedies. First, a Kansas bankruptcy decision, *In re Wilson,* 390 F. Supp. 1121 (D. Kan. 1975), holds that failure of a secured lender to seek judicial enforcement of an Article 9 security interest at the time it obtained a personal judgment against the debtor constituted an impermissible attempt to split a cause of action. Therefore, the lender was not allowed to seek judicial foreclosure on its secured claim when the debtor later filed bankruptcy. This is consistent with pre-code case, *Kearny v. Nunn*, 156 Kan. 563, 134 P.2d 635 (1943), which held an action to foreclose the lien barred a latter action on the note. A later Tenth Circuit decision, *In re Hill*, 648 F.2d 1282 (10th Cir. 1981) (applying Colorado law), appears to reject the reasoning in *Wilson*. It would appear that Kansas is in a

_____

[22] Marshalling of assets has no application is this case.

very small minority holding that the judicial actions must be brought together.  See Wright & Summers Practitioner Treatise at §34-4.[23]

*Wilson*,[24] as stated in the above UCC Comment, did decide, under Kansas law, that a judgment creditor, who prepetition obtained an in personam judgment without also foreclosing on Article 9 collateral, was precluded, under principles of res judicata, from bringing a subsequent action to enforce its security and likewise was precluded from enforcing its security interest against the bankruptcy trustee.  Debtor Wilson and his wife had prepetition granted a security interest in two automobiles and other personal property to secure a note.  When the loan became delinquent, the lender brought an action and secured a judgment for the full amount of the loan.  No attempt was made to foreclose on the collateral.  Debtor filed a wage earner bankruptcy less than four months after the judgment.  The bankruptcy trustee objected to the lender's assertion of its claim as secured.  The referee ordered the claim be treated as unsecured, and the district court affirmed.  The judge summarized Kansas law as follows:

> . . . the Kansas Supreme Court indicates that under the principles of res judicata, when a creditor brings either an action on a note or an action to foreclose a real estate mortgage securing that note, he has spent his one opportunity to judicially enforce the obligation. If the creditor first forecloses on the mortgage, he is precluded from bringing a subsequent action to obtain an in personam judgment on the note, and if he first obtains an in personam judgment, he is precluded from bringing a subsequent action to foreclose the mortgage.  If the creditor wishes to both foreclose the mortgage and obtain an in personam judgment, he must assert both claims in a single action.[25]

---

[23] K.S.A. 84-9-501, Kansas Comment (Furse 1996).

[24] *In re Wilson*, 390 F. Supp. at 1121.

[25] *Id.*, 390 F. Supp. at 1124.

11

He then found this real property law has a "parallel application . . . [to] a chattel mortgage,"[26] relying upon an unpublished federal district court opinion. He rejected the creditor's reliance upon K.S.A. 84-9-501.

A bankruptcy court is not bound by decisions of the federal district court entered in appeals of bankruptcy cases, even though sitting in the same district.[27] Rather, district court decisions are "authority only to the extent they are persuasive."[28] As stated below, this Court respectfully finds foregoing reasoning unpersuasive.

First, the Debtor has not cited and this Court has not located any decisions of the Kansas appellate courts, either before or after the enactment of Article 9 of the UCC, which have applied the one action rule to foreclosures of liens on personal property. *Kearny*,[29] cited by the *Wilson* court,[30] addresses the foreclosure of a mortgage of real property. *Hoidale*,[31] the Kansas case cited by Debtor, addresses the foreclosure of a real property mechanics lien. There is no policy reason to apply the one action rule in this case. The Kansas Court has stated the following to be the concerns which are the basis of the rule against splitting a cause of action: "[P]reserving judicial economy and convenience; avoiding repetitive or fragmented litigation; and protecting a

---

[26] *Id.*

[27] *Farmers Home Administration v. Buckner (In re Buckner)*, 218 B.R. 137, 146 n.12 (10th Cir. BAP 1998); *Jones v. Navastar Mortg., Inc. (In re Jones)*, 298 B.R. 451, 461 (Bankr. D. Kan. 2003).

[28] *In re Jones*, 298 B.R. at 461.

[29] *Kearny County Bank v. Nunn*, 156 Kan. 563, 134 P.2d 635 (1943).

[30] *In re Wilson*, 390 F. Supp. at 1123 and 1124. The *Wilson* decision also relied upon an unpublished opinion of the federal district court, *Matter of Downey*, no. 8726-B-2, D. Kan. 1964, which is not available for review.

[31] *Home State Bank v. Hoidale Co., Inc.*, 239 Kan. at 165, 718 P.2d at 292.

12

party from multiple harassment and expense over the same claim."[32]   The issue in this case is whether the creditor who has obtained a judgment on a note has a secured or unsecured claim in bankruptcy.  Judicial economy, fragmented litigation, and protection from multiple litigation are not relevant concerns.  Debtor, not Citizens, initiated the bankruptcy proceeding.  If the rule is applied as urged by Debtor, he would receive a windfall, even though none of the concerns which are the basis for the doctrine are not present.

Second, assuming that prior to adoption of the UCC Kansas had held that the one action rule applied to judgments on notes secured by personal property, the adoption of Article 9 would have displaced that rule.  K.S.A. 84-1-103(b) (2008 Cumm. Supp.) provides that the principles of common law and equity supplement the UCC "[u]nless displaced by the particular provisions of the uniform commercial code."  The Official UCC Comments states:

> . . . The Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement its provisions in many important ways.  At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.[33]

---

[32] *Id.*, 239 Kan. at 169, 718 P.2d at 295.

[33] K.S.A. 84-1-103, Official UCC Comment 2 (2008 Cumm. Supp.).

As examined above, the drafters of UCC § 9-501 and Rev. UCC § 9-601 intended to eliminate the one action approach to the remedies of creditors with claims secured by personal property. Application of a Kansas common law rule to the contrary, if such existed, would be precluded by K.S.A. 84-1-103(b).

Despite UCC § 1-103(b), specific legislation inconsistent with the purpose and policy of the flexible remedies may effectively vary UCC § 9-601. Official Comment to UCC § 1-103 states when a statute, rather than the common law, arguably conflicts with the UCC, the "interpretive principles addressing the interrelationship between statutes may lead the court to conclude that the other statute is controlling, even though it conflicts with the Uniform Commercial Code."[34] For example, in California, the election of remedies provision of the Unruh Act, governing installment sales to consumers, controls over UCC § 9-501.[35] In Kansas, K.S.A. 16a-5-103, a section of the Kansas Consumer Credit Code (UCCC), restricts deficiency judgments in a narrow class of consumer small value credit sales (for example, sales where the value of goods is $1,000 or less), and, to make that restriction effective, also prohibits a creditor's resort to collateral after obtaining a judgment on the debt.[36] That statute does not

---

[34] *Id.*, Official UCC Comment 3.

[35] *In re Harris*, 120 B.R.142 (Bankr. S.D. Cal. 1990).

[36] K.S.A. 16a-5-103 provides in part:

(1) This section applies to a deficiency on a consumer credit sale of goods or services and on a consumer loan in which the lender is subject to defenses arising from sales (K.S.A. 16a-3-405, and amendments thereto); a consumer is not liable for a deficiency unless the creditor has disposed of the goods in good faith and in a commercially reasonable manner.

(2) If the seller repossesses or voluntarily accepts surrender of goods which were the subject of the sale and in which he has a security interest, the buyer is not personally liable to the seller for the unpaid

14

apply here where the consumer credit sale was the purchase of a truck costing in excess of

$37,000.

Fourth, the *Wilson* court's construction of K.S.A 84-9-501, quoted in note 6 above, is

strained and inconsistent with that of other courts.  The court stated:

> The Referee concluded that the provisions of the Uniform
> Commercial Code support rather than nullify the [one action rule
> stated in] the Downey decision.  The Court agrees with the

---

balance of the debt arising from the sale of a commercial unit of goods of which the cash sale price was $1,000 or less, and the seller is not obligated to resell the collateral unless the buyer has paid 60% or more of the cash price and has not signed after default a statement renouncing his rights in the collateral.

(3) If the seller repossesses or voluntarily accepts surrender of goods which were not the subject of the sale but in which the seller has a security interest to secure a debt arising from a sale of goods or services or a combined sale of goods and services and the cash price of the sale was $1,000 or less, the buyer is not personally liable to the seller for the unpaid balance of the debt arising from the sale, and the seller's duty to dispose of the collateral is governed by the provisions on disposition of collateral (K.S.A. 84-9-610, and amendments thereto) of the uniform commercial code.

(4) If the lender takes possession or voluntarily accepts surrender of goods in which he has a security interest to secure a debt arising from a consumer loan in which the lender is subject to defenses arising from sales (K.S.A. 16a-3-405, and amendments thereto) and the net proceeds of the loan paid to or for the benefit of the debtor were $1,000 or less, the debtor is not personally liable to the lender for the unpaid balance of the debt arising from the loan and the lender's duty to dispose of the collateral is governed by the provisions on disposition of collateral (K.S.A. 84-9-610, and amendments thereto) of the uniform commercial code.

* * *

(7) If the creditor elects to bring an action against the consumer for a debt arising from a consumer credit sale of goods or services or from a consumer loan in which the lender is subject to defenses arising from sales (K.S.A. 16a-3-405, and amendments thereto), when under this section the creditor would not be entitled to a deficiency judgment if the creditor took possession of the collateral, and obtains judgment:

(a) The creditor may not take possession of the collateral, and
(b) the collateral is not subject to levy or sale on execution or similar proceedings pursuant to the judgment.

15

Referee's conclusion.  Since the rights and remedies are cumulative, the creditor is not forced to elect between the remedies and thus is free to assert them simultaneously.  It is the fact that he is free to assert them simultaneously which activates the res judicata [one action] doctrine.  The portion of subsection (5) which states that an execution lien relates back to the date the security interest was perfected likewise neither explicitly nor implicitly vitiates the rule followed in the Downey decision.  Subsection (5) arguably gives rise to a negative inference that the creditor would lose his priority if the execution lien did not relate back.  The creditor would lose his priority only if by obtaining an execution lien he loses the right to enforce his security interest.  At least the provisions of subsection (5) avoid the need to bring a second action to enforce the security interest by giving the creditor the same priority under his execution lien as he would have under his security interest.  The purpose for applying the doctrine of res judicata in the Downey case was to eliminate the possibility of two actions where one would suffice.  The fact that an execution lien relates back thus supports or at least is consistent with the reason for the rule recognized in Downey.[37]

This analysis equates the right to exercise remedies simultaneously with a duty to do so, with the consequence of loss of collateral if collection and foreclosure are not simultaneous.  This is not what UCC § 9-501 states.  Further, the remedies of the secured party include not only judicial enforcement, but also those remedies provided for in part five of Article 9 and in the security agreement.  It would be inconsistent with the principle of flexibility of remedies and Article 9 permitting (but not explicitly requiring) simultaneous remedies to construe an election to first seek a judgment on the note to cause loss of these rights, such as self help repossession, if a judicial foreclosure is not included in an action on the note.  Subsection (5), providing that the lien of the judgment on the collateral relates back, addresses the secured party's rights if electing "not to enforce the security interest under Article 9, but pursuant to a

---

[37] *In re Wilson*, 390 F. Supp. at 1125.

16

judgment."[38] There is no implication that this creation of judgment lien rights is accompanied by a loss of foreclosure or possessory rights.[39]  The UCCC limitations of remedies in K.S.A. 16a-5-103(7), which prohibits the creditor from receiving the value of the collateral after obtaining a judgment in certain small value consumer transactions, would not be necessary if the *Wilson* decision correctly construed UCC § 9-501.  The question is not whether the one action rule requires conduct prohibited by K.S.A. § 9-501, as the *Wilson* decision seems to have approached the statutory question.  The question is whether engrafting a one action rule on a creditor's remedies conflicts with the terms and purpose of Article 9.  The answer to that question is "Yes."  Further, *Wilson* provides no rationale for the conclusion that because, in his view, the one action rule would apply to bar a post judgment suit by the creditor against the debtor to foreclose its lien (in other than an action on the judgment), the rule also renders the claim unsecured in bankruptcy, when it is the Debtor, not the creditor, who has requested the assistance of the legal system and the creditor is in essence seeking to enforce its judgment.

Fifth, the one Kansas opinion expressing a favorable attitude toward *Wilson* opinion did not involve a personal property lien, and other courts have declined to follow or criticized *Wilson*.  The Kansas Supreme Court in *Hoidale*,[40] extensively quoted from *Wilson*, but *Hoildale* involved the one action rule as applied to foreclosure of interests in real property, not Article 9 collateral.  The federal courts have declined to follow or criticized *Wilson*.  The Tenth

---

[38] K.S.A. 84-9-501, Kansas Comment 1996 ¶ 8 (Furse 1996).

[39] In addition, the Court notes that the security agreement in this case, as in many consumer transactions, provides that the creditor's delay in the exercise of a remedy provided for in the security agreement, which includes repossession of the collateral, shall not result in loss of rights.

[40] *Home State Bank v. Hoildale*, 239 Kan. at 168, 718 P.2d at 294.

17

Circuit Court of Appeals, in *Hill*,[41] when applying the Colorado version of UCC § 9-501(1), which was identical to the Kansas version at issue in *Wilson*, the circuit court held that a bank which had taken an in personam judgment prior to bankruptcy but failed to foreclose or execute on its judgment was not precluded by the Colorado bar against cumulative remedies from enforcing its security agreement against the bankruptcy trustee. It distinguished *Wilson* based upon a finding that a Colorado case construing UCC § 9-501 had relied upon cases and commentators which disagreed with the analysis in *Wilson*. Former District Judge Kelly, in *Bank of Oklahoma*,[42] under facts quite different from those at issue here, denied a contention the second action could not be maintained to foreclose a mortgage or security agreement because those causes of action were not raised in an earlier case in which the secured creditor appeared in a defense position. The defendant's primary authority was *Wilson*, which Judge Kelly declined to follow. He found *Wilson* to have been "substantially discredited" by both the Tenth Circuit Court of Appeals, in *Hill*, and UCC commentators[43] and concluded that the "Kansas appellate courts have at no time reaffirmed their adherence to the waiver of remedy doctrine after the enactment of K.S.A. 84-9-501, nor have they adopted the *Wilson* decision and rationale."[44]

---

[41] *In re Hill*, 648 F.2d at 1282.

[42] *Bank of Oklahoma, N.A. v. Fidelity State Bank and Trust Co.*, 623 F. Supp. 479 (D. Kan. 1985).

[43] *Id.*, 623 F. Supp. at 484.

[44] *Id.*, 623 F. Supp. at 485.

18

**CONCLUSION.**

For the foregoing reasons, the Court denies Debtor's motion for summary judgment on the issue of whether the lien of Defendant Citizens Bank on Debtor's 2005 Ford truck is ineffective because prepetition Citizens obtained a judgment on Debtor's note secured by the truck but failed to foreclose its lien on the Ford in the same action. Under Kansas law, the doctrine of election of remedies or the one action rule does not apply to Citizen's rights as the holder of a note secured by a perfected lien on Debtor's truck.

**IT IS SO ORDERED.**

**###**

19